UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM HASSAN MILHOUSE,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 07-2222** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **FEDERAL BUREAU OF PRISONS,** | : | |
| **GARY REYNOLDS, M.D., P.A. T.** | : | |
| **FAUSTO, MS. DAVIS, P.A., DR.** | : | |
| **SPALDING, DR. DALMASI, WARDEN** | : | |
| **TROY LEVI, CAPTAIN DAVID C.** | : | |
| **KNOX, SIS LIEUTENANT JAMES** | : | |
| **GIBBS, and JOHN DOES 1-10.** | : | |
| | : | |
| **Defendants.** | : | |

## AMENDED COMPLAINT

Plaintiff Kareem Hassan Milhouse files this Amended Complaint against

Defendants Federal Bureau of Prisons, Gary Reynolds, M.D., P.A. T. Fausto, Ms. Davis, P.A.,

Dr. Spalding, Head Dr. Dalmasi, Warden Troy Levi, Captain David C. Knox, SIS Lieutenant

James Gibbs, John Does 1-10, individually and in their official capacities.  In support, Mr.

Milhouse states as follows:

## INTRODUCTION

1.       This is a civil rights action for damages filed pursuant to *Bivens v. Six*

*Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the

violation of Mr. Milhouse's right to adequate medical care as guaranteed and protected by the

Constitution of the United States.

2.     At all times relevant to this action, Mr. Milhouse was a pretrial detainee at the Federal Detention Center in Philadelphia, Pennsylvania and/or has been a prisoner under the custody and control of the Federal Bureau of Prisons.

3.     Defendants, individually and collectively, deprived Mr. Milhouse of his federally guaranteed rights by denying him adequate medical care.

4.     All allegations of this Complaint are based on Mr. Milhouse's belief and information currently available to him.  Further discovery is needed to determine, among other things, all individuals involved and the full extent of each defendant's and other individuals' actions or omissions that deprived Mr. Milhouse of adequate medical care.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

6.     Venue lies in the Eastern District of Pennsylvania under 28 U.S.C. § 1391 because a substantial amount of the acts and omissions giving rise to this Complaint occurred in this District.

## PARTIES

7.     Mr. Milhouse is an adult individual presently incarcerated at the United States Penitentiary – Lewisberg in Pennsylvania.

8.     Defendant Federal Bureau of Prisons manages, governs and supervises a correctional facility, the Federal Detention Center, with its principal place of business at 700 Arch Street, Philadelphia, Pennsylvania 19106.

9.     Defendant Dr. Gary Reynolds is an adult individual, who, at all times relevant to this action, resided in the district.

2

10.     Defendant Physician Assistant T. Fausto is an adult individual, who, at all times relevant to this action, resided in the district.

11.     Defendant Physician Assistant Davis is an adult individual, who, at all times relevant to this action, resided in the district.

12.     Defendant Dr. Spalding is an adult individual, who, at all times relevant to this action, resided in the district.

13.     Defendant Dr. Dalmasi is an adult individual, who, at all times relevant to this action, resided in the district.

14.     Defendant Warden Troy Levi is an adult individual, who, at all times relevant to this action, resided in the district.

15.     Defendant Captain David C. Knox is an adult individual, who, at all times relevant to this action, resided in the district.

16.     Defendant SIS Lieutenant James Gibbs is an adult individual, who, at all times relevant to this action, resided in the district.

17.     Defendants John Does 1-10 are adult individuals.  At all times relevant to this action, they were employed by, or agents of, the Federal Bureau of Prisons.

18.     Each of the individual defendants, at all times relevant to the allegations in this Complaint, was employed by, or an agent of, the Federal Bureau of Prisons.

19.     Each of the individual defendants is sued in his or her individual and official capacities.  At all times relevant to the allegations in this Complaint, each was acting under color of law.

## FACTS

20.     On April 4, 2006, Consulting Physician Gary R. Sirken, D.O. examined Mr. Milhouse at Frankford Hospital, Frankford, Pennsylvania.

3

21.     Among other things, Dr. Sirken observed in a consultation report that:

> The impression at this time is: 1. Acute renal failure, likely hemodynamically mediated as this is already resolved with IV fluids. His last creatinine at 1.8. He does have mild rhabdomyolysis. This is in the setting of outpatient crack cocaine use. We will follow serial CPKs, follow chemistries and continue on IV fluids. We will check routine urine indices. CPK is elevated. Therefore, once again will be followed serially and will check uric acid. 2. Substance abuse for which he uses crack cocaine. He does have some abnormal EKG findings. Cardiology is consulted. Troponins are going to be checked serially. He at present is asymptomatic. 3. Blood pressure/hemodynamic stability.

22.     On or about May 12, 2006, Mr. Milhouse was arrested, and at all times since the date of his arrest, Mr. Milhouse has been in the custody and control of the Federal Bureau of Prisons.

23.     On approximately May 18, 2006, Mr. Milhouse informed defendant Physician Assistant T. Fausto that Mr. Milhouse was hospitalized recently for kidney failure.

24.     On approximately June 6, 2006, SIS Lieutenant Gibbs placed Mr. Milhouse in a special housing unit purportedly while he investigated an allegation that Mr. Milhouse planned to escape from the Federal Detention Center and from the hospital by faking medical problems.

25.     Captain David C. Knox thereafter concluded that Mr. Milhouse did plan to escape from the Federal Detention Center and from the hospital by faking medical problems. Captain Knox, however, never conducted an investigation of Mr. Milhouse's medical health.

26.     Despite Captain Knox's conclusion that Mr. Milhouse was faking a medical condition, SIS Lieutenant Gibbs acknowledged that the Federal Detention Center had received documentation verifying Mr. Milhouse's kidney failure and need for further treatment.

4

27.     On approximately June 7, 2006, Mr. Milhouse spoke with Dr. Reynolds. Dr. Reynolds stated to Mr. Milhouse that Mr. Milhouse does not suffer from kidney failure, but Dr. Reynolds made that determination without conducting any physical examination necessary to determine the condition of Mr. Milhouse's kidneys.

28.     On approximately August 31, 2006, Mr. Milhouse provided a urine sample to Physician Assistant T. Fausto.

29.     In the beginning of September 2006, Defendant Fausto recommended that Mr. Milhouse see Dr. Reynolds because there was too much protein in Mr. Milhouse's urine.

30.     On approximately September 22, 2006, Mr. Milhouse spoke with Dr. Reynolds. Dr. Reynolds stated to Mr. Milhouse his understanding that Mr. Milhouse may have suffered from kidney failure in the past, but no longer does. Dr. Reynolds made that determination without conducting any physical examination necessary to determine the condition of Mr. Milhouse's kidneys.

31.     In approximately December 2006, Dr. Reynolds determined that Mr. Milhouse had a heart murmur and ordered an electrocardiogram ("EKG"). Mr. Milhouse never received that EKG test. Dr. Reynolds failed to take adequate steps to ensure that Mr. Milhouse in fact received an EKG test. Once again, Dr. Reynolds told Mr. Milhouse that he does not suffer from kidney failure without conducting any physical examination necessary to determine the condition of Mr. Milhouse's kidneys.

32.     On approximately January 9, 2007, Mr. Milhouse lost consciousness and passed out. As a result, Mr. Milhouse fell to the floor and suffered injuries to his back and head.

33.     A medical emergency was called for Mr. Milhouse.

34.     Physician Assistant Davis responded to Mr. Milhouse's medical emergency. Physician Assistant Davis administered a finger stick and checked Mr. Milhouse's blood pressure.

35.     Mr. Milhouse explained to Physician Assistant Davis that he was experiencing pain in the back of his head and his lower back.

36.     Dr. Reynolds examined Mr. Milhouse approximately three days after Mr. Milhouse passed out and fell. Dr. Reynolds checked Mr. Milhouse's blood pressure and determined that his blood pressure was high. Dr. Reynolds provided pain medication for Mr. Milhouse's blood pressure and back and head injuries. Dr. Reynolds did not conduct any physical examination to determine if Mr. Milhouse was suffering from kidney failure, despite Mr. Milhouse having informed Dr. Reynolds at that time that he was concerned that he was still suffering from problems associated with his kidneys. Dr. Reynolds again failed to ensure that Mr. Milhouse received the EKG test previously ordered, and did not re-order the EKG test, despite knowing that the test had not been provided.

37.     Without any form of a medical assessment of Mr. Milhouse's back injuries, Physician Assistant Fausto prescribed pain medication, on the following approximate dates: February 16, 2007, May 8, 2007, in September 2007 and on October 30, 2007.

38.     On approximately March 15, 2007, Mr. Milhouse expressed to Dr. Spalding that Mr. Milhouse was experiencing pains in his lower back and could not stand fully upright because of the pain.

39.     Dr. Spalding stated that he "treats problems that he sees" and failed to provide adequate medical care to Mr. Milhouse.

6

40.     In approximately March 2007, Dr. Reynolds met with Mr. Milhouse. Again, Dr. Reynolds did not conduct any physical examination to determine if Mr. Milhouse was suffering from kidney failure, despite Mr. Milhouse having informed Dr. Reynolds at that time that he was concerned that he was still suffering from problems associated with his kidneys.  Dr. Reynolds again failed to ensure that Mr. Milhouse received the EKG test previously ordered, and did not re-order the EKG test, despite knowing that the test had not been provided.

41.     Dr. Dalmasi is the head doctor of the Federal Detention Center.

42.     Dr. Dalmasi is responsible to have competent medical staff that will render appropriate treatment to prisoners and follow procedures.

43.     Beginning as early as September 2006, Mr. Milhouse and/or Mr. Milhouse's counsel contacted Warden Troy Levi on multiple occasions to request that Mr. Milhouse receive adequate, appropriate and comprehensive medical attention.

44.     The Federal Bureau of Prisons, Warden Levi and Dr. Dalmasi failed to adequately investigate Mr. Milhouse's medical treatment at the Federal Detention Center, failed to ensure that Mr. Milhouse received adequate medical treatment, and failed to adequately supervise the employees and doctors working at the Federal Detention Center in regards to Mr. Milhouse's medical treatment.

45.     The Federal Bureau of Prisons, Warden Levi and Dr. Dalmasi authorized, ratified, acquiesced in and/or condoned the policy or custom of being deliberately indifferent to Mr. Milhouse's right to adequate medical care.

46.     Each defendant was aware that Mr. Milhouse suffered from or faced a substantial risk of kidney failure, serious back pain and/or heart murmur, among other medical conditions.

7

47.     To date, Mr. Milhouse does not know the full extent of his injuries associated with his kidney failure, serious back pain and heart murmur because defendants have failed to provide adequate medical care to Mr. Milhouse.

48.     Each defendant had a duty to ensure that Mr. Milhouse received and/or was not denied adequate medical care.

49.     Each defendant had a duty to investigate Mr. Millhouse's medical condition and any medical complaints he made.

50.     Each defendant had a duty to further investigate the medical care provided to Mr. Milhouse.

51.     Despite the severity of his illnesses and his repeated requests for medical care, defendants, individually and collectively, failed to (i) provide adequate medical care to Mr. Milhouse, (ii) ensure that Mr. Milhouse received adequate medical care, (iii) ensure that Mr. Milhouse was not denied adequate medical care, and (iv) adequately investigate whether Mr. Milhouse was receiving adequate medical care.

52.     As a result of defendants' actions and omissions, Mr. Milhouse has suffered and continues to suffer physical injuries, including without limitation, urinating and defacating blood, serious back pain, exhaustion, dizziness, feeling faint, limitations on his ability to participate in physical recreation, and other injuries that are not yet known because, among other things, Mr. Milhouse has been denied adequate medical examinations by competent medical professionals.

53.     As a result of defendants' actions and omissions, Mr. Milhouse suffered mental anguish and emotional distress.

54.     Each defendant's conduct was willful, wanton, malicious and intentional.

8

## COUNT I: DENIAL OF MEDICAL CARE

### PLAINTIFF V. ALL DEFENDANTS

55.     All prior paragraphs of this Amended Complaint are incorporated and restated here.

56.     Each defendant acted under color of law.

57.     At all relevant times, Mr. Milhouse had a serious medical need.

58.     Each defendant was deliberately indifferent to Mr. Milhouse's serious medical need.

59.     Each defendant was aware that Mr. Milhouse faced a substantial risk of serious harm due to his medical needs.

60.     Each defendant disregarded that risk by failing to take reasonable measures to abate it.

61.     Each defendant was aware that Mr. Milhouse was not receiving adequate medical care.

62.     Each defendant had a duty to ensure that Mr. Milhouse received adequate medical care and failed to do so.

63.     Each defendant acted in conscious disregard of a known and substantial risk of serious harm to Mr. Milhouse.

64.     Mr. Milhouse suffered physical and psychological harm as a direct and proximate result of defendants' deliberate indifference to his Constitutional right to adequate medical care.

65.     As a direct and proximate result of the Defendants' deliberate indifference to Mr. Milhouse's Constitutional rights, as guaranteed by, among other things, the Fifth Amendment, Mr. Milhouse was deprived of his right to adequate medical care.

WHEREFORE, Mr. Mr. Milhouse prays for judgment against Defendants, including a declaration that defendants violated his Constitutional rights, compensatory damages against each defendant, jointly and severally, and punitive damages against each defendant in an amount to be determined at trial, along with attorneys' fees, costs, and any other relief the Court deems necessary and proper.

HANGLEY ARONCHICK SEGAL & PUDLIN

Dated:  August 4, 2009

By:/s/ Matthew A. Hamermesh
    Matthew A. Hamermesh
    One Logan Square, 27th Floor
    Philadelphia, PA  19103-6933
    (215) 568-6200

*Attorneys for Plaintiff Kareem Hassan Milhouse*