IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREEM HASSAN MILHOUSE            :          CIVIL ACTION
                                  :
              v.                  :
                                  :
MS. DAVIS, et al.                 :          NO. 07-2222

MEMORANDUM

Bartle, J.                                    August 25, 2011

          Plaintiff Kareem Hassan Milhouse, now proceeding pro

se, is a federal prisoner who brings this Bivens action against

several officials and members of the medical staff at the

Philadelphia Federal Detention Center ("FDC"), namely:  (1) Dr.

Gary Reynolds ("Reynolds"); (2) Physician Assistant T. Fausto

("Fausto"); (3) Physician Assistant Ms. Davis ("Davis"); (4) Dr.

Spalding ("Spalding"); (5) Dr. Odeida Dalmasi ("Dalmasi"); (6)

Warden Troy Levi ("Levi"); (7) Captain David Knox ("Knox"); (8)

SIS Lieutenant James Gibbs; and (9) John Does 1-10.[1]  Milhouse

alleges that defendants violated his constitutional right to

adequate medical care.  Before the court is the motion of all

named defendants for summary judgment under Rule 56 of the

Federal Rules of Civil Procedure on the ground that Milhouse has

---

1.  A Bivens action is the "federal analog to suits brought
against state officials under [§ 1983]." Ashcroft v. Iqbal, 129
S. Ct. 1937, 1948 (2009) (internal quotation marks omitted); see
also Bivens v. Six Unknown Named Agents of Fed. Bureau of
Narcotics, 403 U.S. 388 (1971).

not exhausted his administrative remedies under the Prison Litigation Reform Act.  See 42 U.S.C. § 1997e.[2]

I.

Summary judgment is appropriate only "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted); see also Fed. R. Civ. P. 56.  The court must view the facts and draw all inferences in favor of the non-moving party.  Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011).

II.

The following facts are undisputed or taken in the light most favorable to the non-moving party.  On April 4, 2006, Milhouse, using the alias Hakim Hasan, went to the emergency room at Frankford Hospital where he was examined and treated for acute kidney failure.  The consulting doctor's report stated that Milhouse's acute kidney failure had been "resolved with IV fluids," though monitoring would continue.  The consulting doctor also indicated that although there were some abnormal

---

2.  In some cases, it appears that the issue has been raised and decided on a motion to dismiss and in others on a motion for summary judgment.  Our Court of Appeals has not commented on which motion is appropriate.  See, e.g., Drippe v. Tobelinski, 604 F.3d 778, 780-81 (3d Cir. 2010); Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002); Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002); Nyhuis v. Reno, 204 F.3d 65, 67-68 (3d Cir. 2000).

electrocardiogram ("EKG") findings, Milhouse was "asymptomatic" at the time.

On May 12, 2006, Milhouse was arrested and incarcerated at the FDC.  Shortly after his arrival, Milhouse informed defendant Fausto that he had recently been hospitalized for kidney failure.  Although the FDC eventually received documentation confirming Milhouse's treatment at Frankford Hospital and tests revealing an excess of protein in Milhouse's urine, defendant Reynolds told Milhouse on September 22, 2006 that he was no longer suffering from kidney failure.  According to Milhouse, Reynolds made this statement without first conducting a physical examination.  During consultations that took place in December 2006, January 2007, and March 2007, Reynolds continued to assure Milhouse that he was no longer suffering from kidney failure.  Nonetheless, Milhouse repeatedly voiced his concern that he was still suffering from this malady.

At the consultation that took place in December 2006, Reynolds determined that Milhouse had a heart murmur and ordered an EKG.  Milhouse purportedly never received the EKG, and Reynolds never re-ordered the EKG at either the January 2007 meeting or the March 2007 meeting.  Instead, during the January 2007 meeting, Reynolds diagnosed Milhouse with high blood pressure and prescribed pain medication for injuries Milhouse had suffered after falling unconscious.  Defendants Fausto and Spalding continued to prescribe pain medication for Milhouse's injuries over the next several months without conducting any

-3-

thorough medical assessments of his injuries despite Milhouse's complaints.

Milhouse filed his complaint in this court on June 4, 2007.[3]  He asserts that medical staff at the FDC provided inadequate medical care and that defendants Levi and Dalmasi violated their duty as supervisory officials at the FDC to ensure that Milhouse received adequate medical care.[4]

                                III.

Defendants argue, as noted above, that Milhouse's suit is barred because he has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") of 1995 § 803(d), 42 U.S.C. § 1997e.  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

_____

3.  The initial complaint named Davis, Fausto, Reynolds, and "Head Doctor John Doe" as defendants.  Milhouse subsequently amended his complaint several times to name the additional defendants.

4.  The bases for Milhouse's claims of inadequate medical care against defendants Davis, Knox, and Gibbs are somewhat unclear. The only allegations made regarding Davis are that:  (1) she "administered a finger stick" and took Milhouse's blood pressure when Milhouse fell unconscious; and (2) she was informed by Milhouse that he was experiencing head and back pain after the fall.  The only allegation against Knox is that despite not having investigated Milhouse's medical history, he nonetheless concluded that Milhouse was planning to escape by faking a medical condition.  Finally, Milhouse's allegations against Gibbs are that he:  (1) placed Milhouse in special housing pursuant to Captain Knox's orders; and (2) acknowledged having received documentation regarding Milhouse's kidney failure treatment from Frankford Hospital.

                                -4-

facility until such administrative remedies as are available are
exhausted." 42 U.S.C. § 1992e(a).  "Proper exhaustion demands
compliance with an agency's deadlines and other critical
procedural rules ...." Woodford v. Ngo, 548 U.S. 81, 90 (2006).
Administrative remedies must be completely exhausted prior to
filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); Mitchell
v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); see also Ahmed v.
Dragovich, 297 F.3d 201, 209 n.9 (3d Cir. 2002).

       The internal grievance system of a prison or jail is an
administrative remedy.  See Booth v. Churner, 532 U.S. 731, 738-
39 (2001).  The Federal Bureau of Prisons ("BOP") has established
a four-step inmate grievance procedure.  First, the federal
prisoner must attempt to resolve informally the dispute with
institution staff.  28 C.F.R. § 542.13(a).  If the attempt at
informal resolution fails, the inmate must then submit a written
administrative remedy request to the Warden of the institution
within 20 days of the date on which the event giving rise to the
grievance occurred.  Id. § 542.14(a).  If the Warden denies the
request, the inmate has 20 days from the date of the Warden's
response to file an appeal with the appropriate Regional
Director.  Finally, if the appeal is denied, the inmate has 30
days from the date of the Regional Director's response to file a
final administrative appeal with the General Counsel of the BOP.
Id. § 542.15(a).  The inmate may obtain an extension of the
filing deadline at any step of the process upon demonstrating a
valid reason for delay.  Id. § 542.14(b).  Furthermore, if the

inmate does not receive a response for a given request or appeal within the time period set forth in the regulations (including the time allowed for extensions), the inmate may construe the lack of response as a denial at that level.  Id. § 542.18.[5]

Defendants have attached an affidavit sworn by Darrin Howard, a BOP Attorney Advisor assigned to the FDC, who has access to the BOP's computerized indexes of all administrative requests and appeals filed by federal prisoners.  Mr. Howard attests that out of the hundreds of grievances filed by Milhouse during his stay at the FDC, only Administrative Remedy Request No. 429437-F1, filed on October 4, 2006 and dealing with Milhouse's complaints regarding treatment for his kidney failure, is relevant to this case.[6]

Warden Levi denied Request No. 429437-F1 on October 12, 2006.  Milhouse then filed an appeal with the Regional Director on October 13, 2006 (Appeal No. 429437-R2).  This appeal was rejected as improperly filed on October 15, 2006.  See 28 C.F.R. § 542.17(a).  It is unclear from the record why it was deemed

---

5.  The Warden has 20 calendar days to respond to an inmate's administrative request, while the Regional Director and General Counsel have 30 and 40 calendar days, respectively, to respond to an inmate's appeals.  28 C.F.R. § 542.18.  The time period for a response may be extended once at each level by the same number of days initially allotted for a response at that level.  Id.

6.  The only other administrative remedy request dealing with denial of medical care that was filed before Milhouse filed his complaint in this court on June 4, 2007 is 429297-F1, and that request was rejected at the first level of review.  Milhouse eventually appealed the rejection, but not until December 2007 (regional appeal) and February 2008 (appeal to General Counsel).

improperly filed.  However, the reasoning of the Regional Director is irrelevant because Milhouse did not file within 20 days a final administrative appeal with the General Counsel of the BOP as required under the regulations.  See id. § 542.15(a).

Instead, Milhouse submitted a second appeal to the Regional Director over a year later on December 12, 2007 (Appeal No. 429437-R1), well after he filed suit in this court on June 4, 2007.[7]  On December 13, 2007, this second regional appeal was also rejected as improperly filed.  Finally, on December 31, 2007, plaintiff filed an appeal with the General Counsel (Appeal No. 429437-A1), which was rejected on January 7, 2008.  Because he failed to complete timely the fourth step of the administrative process, that is, his appeal to the General Counsel of the BOP, Milhouse's claim is not exhausted under the PLRA.  See id.

Milhouse asserts that he has satisfied the exhaustion requirement of the PLRA because he has exhausted all of the administrative remedies "available" to him.  Milhouse claims that he was unable to file a timely appeal to the BOP's General Counsel because he did not receive the October 15, 2006 rejection from the Regional Director until November 2009.  In support of his argument, Milhouse has attached a letter that was purportedly written by an FDC employee listing a number of responses that

_____

7.  It is unclear from the record why the regional appeal filed by plaintiff on October 13, 2006 is designated as an "R2" while the second regional appeal filed on December 12, 2007 is designated as an "R1."

Milhouse allegedly did not receive on time.[8]  However, this
letter is insufficient to create a genuine issue of material fact
regarding Milhouse's exhaustion of administrative remedies.  Even
assuming the truth of Milhouse's assertion, the belated receipt
of a response does not render the administrative grievance system
"unavailable," as the regulations clearly provide a method for
requesting extensions for filing appeals, and also set forth a
date after which Milhouse could have assumed that the regional
appeal was denied and filed an appeal to General Counsel.  See
id. §§ 542.14(b); 542.18.  There is also no evidence on the
record that officials prevented Milhouse from making use of the
administrative grievance procedure to appeal the relevant
request.

        The court concludes that Milhouse has failed to
demonstrate proper exhaustion of his administrative remedies with
regard to his claim of inadequate medical care for his kidney
failure.  Furthermore, as the record does not show that Milhouse
filed any grievances regarding his failure to receive an EKG or
his concerns about the treatment of his January 2007 injuries,
any claims of inadequate medical care based on those allegations
must also fail for lack of exhaustion.

---

8.  The court notes that the letter does not actually support
Milhouse's argument, as it states that Milhouse did not receive
the response from the *Warden* to Request No. 429437-*F1* until
November 2009, not the response from the Regional Director.

Accordingly, the motion of defendants for summary judgment will be granted.[9]

---

9.  To the extent that any John Doe defendants remain, we will also grant summary judgment against plaintiff for failure to exhaust.